IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST AMERICAN REAL ESTATE SOLUTIONS, L.P., a California corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 05 C 2300 |
| v. | ) ) ) | |
| EUGENE "GENE" MOORE, In his capacity as Cook County Recorder of Deeds. | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff First American Real Estate Solutions, L.P. ("First American") sued Defendant Eugene Moore, the Cook County Recorder of Deeds, ("Recorder") on April 19, 2005. In its Complaint, First American alleges two claims: (1) violation of the Illinois Counties Code, 55 Ill. Comp. Stat. 5/5-1106.1 (2005); and (2) violation of the Illinois Freedom of Information Act, 5 Ill. Comp. Stat. 140/6(a) (2005). First American now moves for a preliminary injunction. For the reasons discussed below, the Court denies First American's motion.

### BACKGROUND

**I.      The Parties**

First American is the nation's largest collector and provider of real estate focused public record information. Its coverage extends to more than 95 percent of all real estate in the United States. (R. 1-1, Compl. ¶9.) Similar to how LexisNexis and Westlaw compile public legal records, First American amalgamates public real estate transaction records and enhances the

information to allow customers to search and organize the records more efficiently. (*Id.*)

Recorder is the duly elected recorder of deeds for Cook County, Illinois. (*Id.* ¶10.)

## II. First American's Relationship with Recorder

Prior to January 26, 2005, First American alleges that it regularly obtained from Recorder copies of public documents recorded and maintained by Recorder, like deeds and mortgages, in bulk form ("Copies"), without restrictions or duplication fees. (*Id.* ¶11.) From approximately 1988 to approximately December 19, 2003, Recorder consistently provided First American and its predecessor with Copies in microfilm format, without use restrictions and for a reasonable duplication fee of $15 per microfilm roll. (*Id.* ¶12.) Around December 19, 2003, Recorder stopped providing First American with Copies in microfilm format, and until November 15, 2004, Recorder regularly provided First American with Copies in Compact Disc-Read Only Memory ("CD-ROM") format, without use restrictions or any duplication fees. (*Id.* ¶13.)

On or about November 15, 2004, Recorder ceased providing Copies in CD-ROM format and began providing First American with Copies in an electronic format through the Internet, via a File Transfer Protocol ("FTP") site, with no use restrictions or duplication fees. (*Id.* ¶14.) Prior to November 15, 2004, Recorder informed First American that for First American to continue obtaining the Copies by FTP after January 1, 2005, Recorder would require that First American accept the terms of an agreement ("Agreement"). (*Id.* ¶16.)

## III. The Agreement

Under the section titled "Duties and Obligations of the Purchaser," the Agreement requires that:
> Purchaser understands and agrees that it in no way acquires rights to other usage of the recorded document copies or disks, or the data contained thereon, and

2

>that Compilation Format of Data is the exclusive property of the Recorder and shall not be resold, transferred, or made available by Purchaser to any other person or entity for any purpose whatsoever, other than as described in this Agreement. No duplication or reproduction of the Recorder's work product in any form or manner, including disk format, shall be permitted.

(R. 1-1, Compl. Ex. A ¶2.) In addition, the Agreement requires that First American deposit $125,000.00 with the Recorder on a quarterly basis. (*Id.* ¶3.) The deposit suggests a rate of $0.50 per document. If the deposited funds are insufficient to cover the costs due for the actual number of copies requested by First American, the Agreement would obligate First American to pay an additional $0.50 for every document that exceeds the $500,000.00 already deposited. (*Id.*)

## IV. First American's Refusal to Accept the Agreement

First American objected to signing the Agreement, alleging that Recorder is proscribed by law from imposing the fees and restrictions. (R. 1-1, Compl. ¶21.) On January 26, 2005, following First American's refusal to accept the Agreement, Recorder terminated First American's access to the FTP site. (*Id.* ¶22.)

Recorder alleges that two of First American's competitors, Chicago Title and LanData, have accepted the Agreement. (R. 22-1, Def.'s Resp. Ex. B ¶18.) Recorder also claims that it provides at least three First American companies with document images via accounts on Recorder's Internet site at $0.50 per document image. Those companies are the following: (1) Optima Information Solutions; (2) DataTree; and (3) First American Real Estate Solutions. (*Id.* ¶17.)

## IV. First American's Proof of Irreparable Harm

Tina Locklear ("Locklear"), Vice President and General Counsel of First American,

claims that public real estate transaction records are critical to First American's customers. (R. 12-1, Pl.'s Mot. Prelim. Inj. Ex. A ¶4.) Locklear alleges that the use restraints prevent First American from providing timely Cook County real estate transaction information to its clients. (*Id.* ¶7.) Locklear purports that a failure by First American to provide timely real estate transaction information will ultimately cause First American to lose customers to its competitors. (*Id.*)

## ANALYSIS

**I.    Legal Standard**

To obtain a preliminary injunction, a party must first show: (1) that it has a reasonable likelihood of success on the merits of its underlying claim; (2) that it has no adequate remedy at law; and (3) that it will suffer irreparable harm without the preliminary injunction. *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 803-04 (7th Cir. 2002) (citing *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 474 (7th Cir. 2001) and *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 429-30 (7th Cir. 2001)). If a plaintiff meets those burdens, the court then must consider any irreparable harm the preliminary injunction might impose upon the party against whom the injunction is sought and whether the preliminary injunction would harm or foster the public interest. *Id.*

In assessing harm, "[t]he *only* harm that is relevant to the decision to grant a preliminary injunction is irreparable harm, since if it is reparable by an award of damages at the end of trial[,] there is no need for preliminary relief." *In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003) (emphasis added). When there is no showing of irreparable harm, the court should deny a preliminary injunction on that ground alone. *Praefke Auto Elec. & Battery Co. v.*

*Tecumseh Prod.s Co., Inc.*, 255 F.3d 460, 463 (7th Cir. 2001).

As discussed below, First American fails to show that it will suffer irreparable harm should the Court deny its motion for a preliminary injunction. Accordingly, the Court need not address the remaining factors relevant to a preliminary injunction analysis.

## II.     First American Has Not Established Irreparable Harm

Recorder argues that First American's alleged harm from having to sign the Agreement is monetary, and therefore not irreparable. The Court agrees.

First American fails to meet its burden of proving irreparable harm. The Seventh Circuit has clearly held that courts should deny preliminary injunctions when the moving party does not show that it will incur irreparable harm. *See Praefke*, 255 F.3d 460, 462-63. When losses are "purely financial, easily measured, and readily compensated," there is no showing of irreparable harm. *Id.* at 463 (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). In *Praefke*, the plaintiff was a wholesaler for the defendant, which entitled the plaintiff to purchase the defendant's products at discounted prices. *Id.* at 462. The defendant then terminated a contract that controlled its distribution, resulting in the plaintiff losing its wholesaler status. *Id.* The plaintiff continued to sell the defendant's products, but no longer received any discounts. *Id.* Subsequently, the plaintiff filed a lawsuit seeking reinstatement as a wholesaler, and moved for a preliminary injunction in the interim. *Id.*

Finding that the plaintiff was only facing a reduction in profits, the Seventh Circuit held that there was no showing of irreparable harm. Although the change forced the plaintiff to buy defendant's products at higher prices, there was no disruption of its dealer network. *Id.* Furthermore, even though the increased prices reduced the plaintiff's profits, the defendant's

5

parts were only a small part of the plaintiff's business.  Therefore, "[plaintiff's] profits [did not fall] to a point that threaten[ed] its solvency." *Id.* at 463.  Any losses were solely pecuniary in nature and were readily calculable and the Seventh Circuit upheld the trial court's denial of the preliminary injunction. *Id.*

The facts in this case parallel those of *Praefke*.  In the past, First American received copies for free or for a nominal fee.  (R. 1-1, Compl. ¶11.)  Now, Recorder is permitting the free viewing of the public records, but is imposing a $0.50 fee for any copy printed from the FTP site. (R. 1-1, Compl. ¶¶17-18.)  The Agreement would obligate First American to pay roughly $500,000.00 a year depending on the amount of copies it requests.  Just as the Seventh Circuit found in *Praefke,* this amount is a pecuniary value that is "easily measured" and "readily compensated."  *See Praefke*, 255 F.3d at 463.

First American does not offer any evidence that it could not pay the fee[1], or any other evidence of any non-monetary injury.  First American argues that the Agreement places use restrictions on First American which would ultimately result in First American losing its Chicago-land area customers.  (R. 12-1, Pl.'s Mot. Prelim. Inj. p.5).  The evidence before the Court, however, does not support this argument.  First American submits an affidavit from its Vice President Tina Locklear ("Locklear"), vaguely claiming that the use restrictions will prevent First American from providing timely information to its clientele.  (R. 12-1, Pl.'s Mot.

---

[1]While $500,000 is a substantial sum, the Court cannot infer that First American cannot pay this fee, and would therefore lose customers.  By its own admission, First American is the country's largest collector and provider of real estate-focused public record information, with coverage extending to more than 95 percent of all real estate transactions in the United States. (*Id*. ¶9.)  Moreover, First American's competitors have deemed the fee acceptable by actually paying it.  (R. 22-1, Def.'s Resp. Ex. B  ¶18.)

Prelim. Inj. Ex. A ¶7). There is no evidence that explains why this is the case. Notably, First American does not state that the restrictions will inhibit First American from conducting its business, thereby leading to a loss of customers. While First American states that it will suffer a delay due to the restrictions, it does not attempt any explanation as to *why* it would suffer a delay in providing the information to its clients due to the use restrictions. In fact, two of First American's competitors, Chicago Title and LanData, have signed the Agreement. (R. 22-1, Def.'s Resp. Ex. B ¶18.) As Recorder correctly points out, First American offers no explanation as to why it cannot pay the fee like its competitors have, or exactly how and why it would incur irreparable harm due to the use restrictions.

Accordingly, the most that First American can establish is that in order to maintain the status quo, it would have to pay the fee required by the Agreement, and therefore suffer diminished profits. First American can recoup any of the losses it sustains from paying the fee through traditional litigation methods.[2] The loss First American will experience in its profits does not amount to irreparable harm and the Court denies First American's motion for a preliminary injunction.

---

[2]The Court recognizes that in some circumstances a monetary burden could impact a plaintiff's scheme of distribution in such a way as to constitute irreparable, non-monetary, harm. *See Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172-73 (7th Cir. 1997) (affirming preliminary injunction because aside from depriving the plaintiff of income, the defendant's copyright infringement was disrupting the plaintiff's scheme of distribution). Here, however, First American has not proven any such non-pecuniary losses.

## CONCLUSION

Because First American has not met its burden of showing that it will suffer irreparable harm, the Court denies First American's motion for a preliminary injunction.

Dated: August 10, 2005                    ENTERED:

                                          _____
                                          AMY J. ST. EVE
                                          United States District Court Judge