IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST AMERICAN REAL ESTATE SOLUTIONS, L.P., a California Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 05 C 2300 |
| v. | ) ) | |
| EUGENE "GENE" MOORE, in his capacity as Cook County Recorder of Deeds, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

In its Complaint based on diversity jurisdiction, Plaintiff First American Real Estate Solutions, L.P. ("First American") alleges that Defendant Eugene Moore, the Cook County Recorder of Deeds (the "Recorder"), violated the Illinois Counties Code, 55 ILCS 5/5-1106.1 and the Illinois Freedom of Information Act, 5 ILCS 140/6(a). Before the Court is the Recorder's Motion to Dismiss First American's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court grants in part and denies in part the Recorder's motion to dismiss.

**BACKGROUND**

**I.    The Parties**

First American is the nation's largest collector and provider of real estate focused public record information. Its coverage extends to more than 95 percent of all real estate in the United States. (R. 1-1, Compl. ¶9.) Similar to how LexisNexis and Westlaw compile public legal

records, First American amalgamates public real estate transaction records and enhances the information to allow customers to search and organize the records more efficiently. (*Id*.)

The Recorder is the duly elected recorder of deeds for Cook County, Illinois. (*Id*. ¶10.)

## II. First American's Relationship with the Recorder

Prior to January 26, 2005, First American alleges that it regularly obtained from the Recorder copies of public documents recorded and maintained by the Recorder, like deeds and mortgages, in bulk form ("Copies"), without restrictions or duplication fees. (*Id*. ¶11.) From approximately 1988 to approximately December 19, 2003, the Recorder consistently provided First American and its predecessor with Copies in microfilm format, without use restrictions and for a reasonable duplication fee of $15 per microfilm roll. (*Id*. ¶12.) Around December 19, 2003, the Recorder stopped providing First American with Copies in microfilm format, and until November 15, 2004, the Recorder regularly provided First American with Copies in Compact Disc-Read Only Memory ("CD-ROM") format, without use restrictions or any duplication fees. (*Id*. ¶13.)

On or about November 15, 2004, the Recorder ceased providing Copies in CD-ROM format and began providing First American with Copies in an electronic format through the Internet, via a File Transfer Protocol ("FTP") website, with no use restrictions or duplication fees. (*Id*. ¶14.) Prior to November 15, 2004, the Recorder informed First American that for First American to continue obtaining the Copies by FTP after January 1, 2005, the Recorder would require that First American accept the terms of an agreement (the "Agreement"). (*Id*. ¶16.)

## III. The Agreement

Under the section titled "Duties and Obligations of the Purchaser," the Agreement

2

requires that:

> Purchaser understands and agrees that it in no way acquires rights to other usage of the recorded document copies or disks, or the data contained thereon, and that Compilation Format of Data is the exclusive property of the Recorder and shall not be resold, transferred, or made available by Purchaser to any other person or entity for any purpose whatsoever, other than as described in this Agreement. No duplication or reproduction of the Recorder's work product in any form or manner, including disk format, shall be permitted.

(R. 1-1, Compl. Ex. A ¶2.) In addition, the Agreement requires that First American deposit $125,000.00 with the Recorder on a quarterly basis. (*Id*. ¶3.) The deposit suggests a rate of $0.50 per document. If the deposited funds are insufficient to cover the costs due for the actual number of copies requested by First American, the Agreement would obligate First American to pay an additional $0.50 for every document that exceeds the $500,000.00 already deposited. (*Id*.)

### IV.     First American's Refusal to Accept the Agreement

First American objected to signing the Agreement, alleging that the Recorder is proscribed by law from imposing the fees and restrictions. (R. 1-1, Compl. ¶21.) On January 26, 2005, following First American's refusal to accept the Agreement, the Recorder terminated First American's access to the FTP website. (*Id*. ¶22.)

### V.      First American's Claims

In Count I of the Complaint, First American claims that the Recorder has violated Section 5-1106.1 of the Illinois Counties Codes because the Recorder has refused First American access to the public records maintained on the FTP website for no charge and without restrictions. In Count II, First American alleges that charging a fee for the public records in excess of the limits set by Section 6(a) of the Illinois Freedom of Information Act ("FOIA") constitutes "a denial of

access to public records for the purposes of judicial review."

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assoc., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)). When determining a motion to dismiss, the Court is restricted to reviewing the pleadings, which consist of the complaint and its attached exhibits and the parties' supporting legal memoranda. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). In making its determination, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers*, 398 F.3d at 933.

## ANALYSIS

**I.    Illinois Counties Code**

    **A.    Home Rule Authority**

In Count I of its Complaint, First American alleges that by refusing to provide copies of records in electronic form on the FTP website for no charge and without restrictions, the Recorder has violated Section 5-1106.1 of the Illinois Counties Code. On the other hand, the Recorder contends that the Cook County Board of Commissioners adopted County Ordinances 04-O-38 and 04-O-39, providing for Internet document copying fees, pursuant to statutory and

home rule authority, and thus the Recorder has not violated Section 5-1106.1 of the Illinois Counties Code.

Section 5-1106.1 of the Illinois Counties Code provides for Internet access to public records and reads in pertinent part:

> a) Any county may provide Internet access to public records maintained in electronic form. This access shall be provided at no charge to the public. Any county that provides public Internet access to records maintained in electronic form may also enter into a contractual arrangement for the dissemination of the same electronic data in bulk or compiled form.
>
> ...
>
> (c) If, but only if, a county provides free Internet access to public records maintained in electronic form, the county may charge a fee for the dissemination of the electronic data in bulk or compiled form, but the fee may not exceed 110% of the actual cost, if any, of providing the electronic data in bulk or compiled form.

55 ILCS 5/5-1106.1

The Board of Cook County Commissioners, pursuant to the County's home rule authority under the Illinois Constitution and the Illinois statute authorizing the Recorder to charge fees for non-certified copies of documents, 55 ILCS 5/4-12002, promulgated Cook County Ordinances 04-O-39 and 04-O-38. County Ordinance 04-O-38 reads in pertinent part:

### SECTION 1

> For electronic copies of recorded documents obtained from the Recorder's Internet website, the Recorder is hereby authorized to charge $.50 per document.

### SECTION 2

> For payment of fees set forth in Section 1 of this Ordinance, the Recorder is authorized to accept electronic payment by credit card. If a convenience fee is charged pursuant to subsection (A) or (B), such fee must be clearly posted.

> A. The Recorder may enter into agreements, subject to approval by the Cook County Board of Commissioners, with one or more financial institutions, Internet companies, or other business entities to act as third party payment agents for the payment of fees. These agreements may authorize the third party payment agent to retain a service fee out of the payments collected, or to impose an additional convenience fee.

First American contends that the Board of Commissioner's adoption of the County Ordinance 04-O-38 lies outside of Cook County's home rule authority under Section 6(a) of the Illinois Constitution because the effect of the ordinance is not limited to matters of local concern.[1] The Illinois Constitution of 1970, article VII, section 6(a) created home rule power: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. Art. VII, § 6(a); *Nevel v. Village of Schaumburg*, 297 F.3d 673, 679 n.4 (7th Cir. 2002). Courts construe the powers and functions of home rule broadly. *City of Elgin v. County of Cook,* 169 Ill.2d 53, 63, 214 Ill.Dec. 168, 660 N.E.2d 875 (1995) ("home rule units have all the powers of the sovereign, limited only by the constitution itself and the General Assembly"). The terms of the Illinois Constitution's grant of home rule authority "are broad and imprecise and were purposely left without definition." *Ampersand, Inc. v. Finley,* 61 Ill.2d 537, 539, 338 N.E.2d 15 (1975). It is well-established, however, that local ordinances must pertain to

---

[1] First American also argues that because Section 4-12002 and Section 5/5-1106.1 treat the same subject matter, the more specific statute, Section 5/5-1106.1, should prevail. *See City of Champaign v. City of Champaign Township*, 16 Ill.2d 58, 67-68, 156 N.E.2d 543 (1959). First American bases its argument on the premise the statutes "appear to conflict on the fees," yet fails to develop this argument with any factual or legal analysis. Without more, First American's undeveloped argument is waived. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived").

problems that are local in nature, rather than state or national. *Village of Bolingbrook v. Citizens Utilities Co.,* 158 Ill.2d 133, 138, 198 Ill.Dec. 389, 632 N.E.2d 1000 (1994).

As the *Village of Bolingbrook* court articulated, extreme cases are clear – if a problem is purely statewide or national in nature, it does not pertain to the affairs of a home rule unit. *Id.* "Difficulty arises, however, when a problem has a local as well as statewide or national impact." *Id.* at 138-39. In such situations, the Court must weigh several factors to determine if a governmental unit has exceeded its home rule authority:

> Whether a particular problem is of statewide rather than local dimension must be decided not on the basis of a specific formula or listing set forth in the Constitution but with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it.

*Id.* at 139 (quoting *Kalodimos v. Village of Morton Grove*, 103 Ill.2d 483, 501, 83 Ill.Dec. 308, 470 N.E.2d 266 (1984)). Thus, in the *Village of Bolingbrook,* the court "applied the above three factors to the facts before it and concluded that the Village's regulation of sewage discharges was addressed to a primarily local problem." *Lake County Public Bldg. Comm'n v. City of Waukegan,* 273 Ill.App.3d 15, 21, 209 Ill.Dec. 830, 652 N.E.2d 370 (Ill.App.Ct. 1995).

Whether the *Kalodimos* factors weigh in favor of Cook County's home rule authority is a factual determination that the Court cannot make on a motion to dismiss under Rule 12(b)(6). The Court cannot make this ruling based on the record before the Court at this stage. The parties can raise this issue at the motion for summary judgment stage after conducting discovery.

**B.    Preemption**

Next, First American argues that the Illinois General Assembly preempted Cook County's home rule authority in the area of Recorder documents and fees. The Recorder argues

7

that to the extent that there is a conflict between the ordinances and Section 5-1106.1 of the County Codes, the General Assembly did not expressly limit the exercise of home rule power under the circumstances. *See* Ill. Const. 1970, art. VII, § 6(h) ("The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit").

To "meet the requirements of section 6(h), legislation must contain express language that the area covered by the legislation is to be exclusively controlled by the State. It is not enough that the State comprehensively regulates an area which otherwise would fall into home rule power." *Village of Bolingbrook,* 158 Ill.2d at 138 (citation omitted). "Absent such specificity, the courts will not find the preemption of a home rule unit's authority." *Crawford v. City of Chicago,* 304 Ill.App.3d 818, 826, 237 Ill.Dec. 668, 710 N.E.2d 91 (Ill.App.Ct. 1999) (citation omitted). Furthermore, there is no implied preemption of home rule power. *See Schillerstrom Homes v. City of Naperville,* 198 Ill.2d 281, 288, 260 Ill.Dec. 835, 762 N.E.2d 494 (2001).

Assuming that the statute and ordinances are conflicting, Section 5-1106.1 does not expressly state that the State of Illinois is exercising exclusive power over the fees charged for copies of public records on the Internet nor does the statute articulate that it is preempting home rule authority. As the Illinois Supreme Court has explained:

> When the General Assembly intends to preempt or exclude home rule units from exercising power over a matter, that body knows how to do so. In many statutes that touch on countless areas of our lives, the legislature has expressly stated that, pursuant to section 6(h) or 6(i), or both, of article VII of the Illinois Constitution, a statute is declared to be an exclusive exercise of power by the state and that such power shall not be exercised by home rule units.

*City of Chicago v. Roman*, 184 Ill.2d 504, 517, 235 Ill.Dec. 468, 705 N.E.2d 81 (1998). Accordingly, Section 5-1106.1 does not preempt County Ordinances 04-O-38 and 04-O-39.

8

Finally, based on exhibits attached to its legal memorandum, First American argues that Section 5-1106.1 preempts the County ordinances pursuant to Article 7, Section 6(g) of the 1970 Illinois Constitution. To consider these documents, the Court would be required to convert the present motion to one for summary judgment, which the Court declines to do. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993). Furthermore, under both Sections 6(g) and 6(h), "unless the legislature is specific on preemption, courts will not restrict home rule authority." *Page v. City of Chicago,* 299 Ill.App.3d 450, 460, 233 Ill.Dec. 575, 701 N.E.2d 218 (Ill.App.Ct. 1998). Because Section 5-1106.1 does not expressly state that it is preempting home rule authority or that the State has exclusive authority to control the fees charged for public records via the Internet, any argument based on Section 6(g) must fail.

## II.     Illinois Freedom of Information Act ("FOIA")

First American also contends that the Recorder violated the Illinois FOIA by charging fees in excess of the limits set by Section 6(a) of the statute. Under the Illinois FOIA, public records are presumed to be open and accessible. *Illinois Education Ass'n v. Illinois State Board of Educ.,* 204 Ill.2d 456, 462-63, 274 Ill.Dec. 430, 791 N.E.2d 522, 526 (2003). Specifically, the Illinois FOIA, Section 3(a) states, "Each public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Section 7 of this Act." 5 ILCS 140/3(a). Section 3(b) of the Illinois FOIA, however, states that the public records that are required to be disclosed under Section 3(a) are subject to the fee provisions in Section 6. Section 6(a) of the Act provides in pertinent part:

> Each public body may charge fees reasonably calculated to reimburse its actual cost for reproducing and certifying public records and for the use, by any person, of the equipment of the public body to copy records. Such fees shall exclude the costs of any search for and review of the record, and shall not exceed the actual

9

cost of reproduction and certification, **unless otherwise provided by State statute**....

5 ILCS 140/6(a) (emphasis added). In other words, state statutes may allow for fees that exceed the actual costs of reproducing and certifying records.

Section 4-12002 of the Illinois Counties Code allows for counties with a population over 1,000,000, such as Cook County, to charge more than $.50 per document for non-certified copies of documents. *See* 55 ILCS 5/4-12002. Because Section 5/4-12002 allows for fees exceeding the actual costs of reproducing records, the County ordinances do not violate Section 6(a) of the Illinois FOIA. Accordingly, First American's argument that the Recorder has violated the Illinois FOIA must fail.

## **CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the Recorder's motion to dismiss.

Dated: September 13, 2005

**ENTERED**

_____
**AMY J. ST. EVE
United States District Court Judge**

10